UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-cr-283 (DSD/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>Plaintiff,   )<br>  )<br>v.   )<br>  )<br>JERMAINE WILLIAM JACKSON,   )<br>JR.   )<br>  )<br>Defendant.   ) | **GOVERNMENT'S POSITION ON SENTENCING** |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and William C. Mattessich, Assistant United States Attorney, submits the following sentencing memorandum, requesting the Court impose a sentence of 140 months imprisonment. This sentence considers the seriousness of the offense, the need to deter gun violence and fentanyl trafficking, and to protect the public. Such a sentence also takes into account Jackson's background and recognizes the potential for rehabilitation shown by Jackson's acceptance of responsibility and his conduct on pretrial release.

I. **BACKGROUND**

On May 6, 2022, law enforcement arrested Jackson while executing a search warrant as part of a narcotics investigation. (PSR ¶ 8). Officers were investigating a lethal drug overdose in Dakota County. (PSR ¶ 117.) While watching Jackson's apartment building, officers saw Jackson come out of the building wearing a bag. (*Id.*) Officers approached Jackson. (*Id.*) He fled briefly before being detained. (*Id.*) Inside the bag, officers found a Glock 43 pistol with twelve rounds in the magazine and 115

"M-30" pills containing fentanyl. (*Id.*) In his bedroom, Jackson had 1,055 additional M-30 pills and two additional firearms – a rifle and a pistol. (*Id.* at 9.) Jackson was intending to distribute the drugs, and he brought the pistol with him to protect the drugs. (*Id.* at 8)

On July 10, 2024, Jackson was charged in the District of Minnesota in a six-count superseding indictment. (ECF No. 40.) That Indictment charged Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C) (Counts One and Four), Carrying a Firearm During and In Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Counts Three and Six), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 40; PSR ¶ 2.) On July 17, 2024, Jackson pled guilty to Counts 4 and 5 of the Superseding Indictment, thereby accepting responsibility for possession with intent to distribute fentanyl and possession of a firearm in furtherance of that crime. (ECF No. 45.) As a result, Jackson admitted to possessing 11.5g of fentanyl in his bag and 105.5g of fentanyl in his apartment. (PSR ¶ 13). The government agrees with the guidelines calculations in the PSR.

## II.     GOVERNMENT'S SENTENCING RECOMMENDATION

Jackson's crime stands at the intersection of two great community harms: gun violence and drug addiction. Considering the factors prescribed by 18 U.S.C. § 3553(a), a sentence of 140 months in prison is sufficient but not greater than necessary to address the seriousness of that offense considering the factors prescribed

by 18 U.S.C. § 3553(a). This sentence, within Jackson's guidelines range of 77-96 months plus the 60 month consecutive sentence, is sufficient but not greater than necessary to address Jackson's drug trafficking and gun crimes.

### A. The Nature and Seriousness of the Offense Supports the Government's Sentence

Distribution of fentanyl harms families and ends lives. This case began as an investigation to find the source of drugs that led to a lethal overdose in Dakota County. (PSR ¶ 117.) Jackson's apartment was searched pursuant to a warrant. (*Id.*) The drug quantities seized here, which Jackson intended to distribute, could have contributed to addiction and overdoses in the state. Any sentence must take into account the great harm caused by this heavily addictive and dangerous drug.

In addition to the danger of the drugs that Jackson was prepared to sell in May of 2022, a sentence also must address the acute danger of the Glock 43 found in his bag. Jackson identified the harm from the gun violence he saw in his own neighborhood as a child. (*See* PSR ¶ 63.) Like much of the country, Minnesota has experienced a surge in gun violence over the past several years. The sentence imposed here must address the danger to the community of engaging in the drug trade with a loaded gun.

### B. Jackson's History and Characteristics Support the Government's Recommendation

A 140 month sentence also adequately accounts for Jackson's history and characteristics, including his upbringing and his conduct on pretrial release. Jackson had a difficult childhood and young adulthood that resulted in residential placement in various youth facilities. The community in which Jackson lived as a child was

plagued with violence, drugs, gang activity, poverty, and addiction. (PSR ¶ 63.) These issues found their way into his own home, where his mother struggled with cocaine addiction and went through periods of incarceration. (*Id.* at ¶ 61.) He joined the Tre Tre crips at a young age. (*Id.* at ¶ 63.) Jackson states that his home environment, which also included his father's temper and use of corporal punishment, led to Jackson fleeing home at the age of 13. (*Id.*) This upbringing should be considered as mitigating circumstances.

In spite of this difficult background, in the year since his first federal charges in September of 2023, Jackson has generally shown an ability to abide by his pretrial release conditions. His pretrial services officer indicated that Jackson has mostly complied with his conditions. (PSR ¶ 6.) He has kept employment throughout that time in order to support his children. (PSR ¶¶ 85-87.) In addition, the amount of detail in his PSR indicates that he was candid and forthcoming with the probation officer who conducted his presentence investigation.

Jackson's contact with law enforcement while in a car with a firearm in November of 2023 is the only truly concerning behavior during this period. (*Id.*) Even though Jackson's girlfriend claimed the firearm was hers, Jackson should have been able to avoid such a situation in the first place given the importance of his bond condition that prohibited contact with firearms. Still, the only modifications to Jackson's conditions have come in response to his own requests and the government has not opposed the modifications. This record certainly suggests that Jackson is capable of working to support his family and remaining law-abiding in the future.

However, Jackson's lengthy criminal history suggests that a substantial period of incarceration is necessary to address his conduct. Shortly after turning 18, Jackson was convicted of a violent crime. In 2015, Jackson and a group of five other males violently robbed two individuals leaving a store in Hennepin County. (PSR ¶ 39.) Both victims required medical attention. (*Id.*) Jackson was convicted of aggravated robbery and sentenced to 58 months imprisonment to be followed by 5 years supervised release. (*Id.*)

Three years later, while still on supervised release for his aggravated robbery conviction, Jackson was charged with a gun crime. In April 2019, he was convicted of Unlawful Possession of a Firearm in Ramsey County. (PSR ¶ 48). According to the charging document, Jackson was arrested when officers found him at the scene of a shooting. (*Id.*) Surveillance video showed the defendant running into a parking lot and firing a gun at an unknown target before placing the gun in a bush. (*Id.*)

Jackson's criminal history includes other convictions for crimes that endanger the public and demonstrate a lack of respect for the law. On October 6, 2015, he was convicted of Fleeing Police in a Motor Vehicle after he stole gasoline from a gas station and led officers on a chase in and out of oncoming traffic that reached speeds of 70 miles per hour. (PSR ¶ 40.) He was convicted of theft three times. (PSR ¶¶ 43, 44, 46.) Jackson also has multiple convictions for driving without a valid license and careless driving. (PSR ¶¶ 41, 42, 49.)

This repeated history of violent crime, gun crime, and other crimes while on supervised release for a violent felony demonstrates the need for a substantial

5

custodial sentence. His conduct escalated from a violent robbery in 2015, to a shooting in 2018, to distribution of fentanyl while possessing a gun in 2022. Jackson was still on supervised release in Hennepin County when he was arrested for the conduct that led to this federal case on May 6, 2022, with a loaded gun in his bag and approximately 117g of fentanyl in his possession. In spite of the mitigating factors in Jackson's background, his term of incarceration must account for his criminal history. The government's recommendation of 140 months does so.

### C. A 140-Month Sentence Serves the Purpose of Deterrence

The sentence imposed must be significant enough to deter similar conduct in Jackson's community and others across the state. A significant term of incarceration sends the message to the community that crimes based on profiting from addiction and gun violence will be taken seriously. Given the rise in fentanyl overdoses over the past decade, such a message is necessary. A guidelines sentence of 140 months accomplishes this goal.

### III.   CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose a sentence of 140 months incarceration.

Respectfully Submitted,

Dated:  October 16, 2024

ANDREW M. LUGER
United States Attorney

 /s/*William C. Mattessich*
BY:   WILLIAM C. MATTESSICH
Assistant U.S. Attorney
Reg. No. 0400513